RICHARD MAC BRIDE, SB# 199695
LAW OFFICES OF RICHARD A. MAC BRIDE
855 Marina Bay Parkway, Suite 210
RICHMOND, CA 94804
Phone 415-730-6289
Fax 510-439-2786
Attorney for Plaintiff Emmanuel Tril

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Emmanuel Tril, <br><br> Plaintiff, <br><br> Vs. <br><br> The City of Oakland; Paramount Theatre of the Arts, Inc.; and Does 1 to 50, <br><br> Defendants. | Case Number _____ <br><br> CIVIL RIGHTS <br><br> COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES: DENIAL OF CIVIL RIGHTS OF A DISABLED PERSON, IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AS AMENDED, SECTION 504 OF THE REHABILITATION ACT, AND VIOLATION OF CALIFORNIA'S CIVIL RIGHTS STATUTES <br><br> JURY TRIAL REQUESTED |

Plaintiff Emmanuel Tril complains of defendants herein, and alleges as follows:

JURISDICTION AND VENUE

1. This court has jurisdiction and subject matter jurisdiction over this matter and these defendants pursuant to 28 USC § 1331 and 1343 for violations of the Americans with Disabilities Act of 1990 (42 USC §12101 et seq.) and Section 504. Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same facts, action is also bought under California law, including, but not limited to, violations of California Government Code §4450; California Health and Safety Code §19953 et seq., and applicable regulations, including but not limited to California Code of Regulations, Title 24, §19959; and California Civil Code §§ 51, 51.5,

Complaint for damages and injunctive relief

-1-

52(a), 52.1, 54, 54.1, and 54.3. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367. Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

2. Venue is proper in the Northern District of California, the judicial district in which the claims have arisen, pursuant to 28 U.S.C. Section 1391(b), and is founded on the fact that the real property that is the subject of this action is located in this district, and that plaintiff's cause of action arose in this district. The case is properly assigned to the San Francisco / Oakland district.

3. During the periods relevant to this complaint, defendant City of Oakland, California (the "City"), a public entity, owned and administered, and owns and administers, the real property at issue, a parcel on which there is located the Paramount Theater at 2025 Broadway, Oakland (the "Theater"). Defendant Paramount Theatre of the Arts, Inc. (the "Corporation"), a private non-profit corporation registered in California, owned, operated, and maintained, and owns, operates, and maintains, the Theater, a historic theater and entertainment venue. The Theater is a program, service, and activity offered to the public.

## INTRODUCTION AND UNDERLYING FACTS

1. Defendant City, and the Corporation (collectively "Defendants"), are being sued herein. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for violations of Title II and III of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

2. Plaintiff Emmanuel Tril is a resident of the city of Oakland, California who lives about six miles from the subject business. Plaintiff is a paraplegic and is substantially limited in his ability to walk and also substantially limited in the use of his arms, requiring him to use a motorized wheelchair for mobility at all times. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

3. In November 2016, Plaintiff Emmanuel Tril purchased tickets to see the musical group Los Angeles Azules perform at the Theatre in their show on November 26, 2021. He bought the tickets on Ticketmaster. He bought tickets that were specifically designated for disabled

persons, in Section CC, seats 4, 6, and 8. (He went with his mother and father.) Section CC is on the main floor, about halfway down from the back of the theatre to the stage.

4. However, when Plaintiff Tril and his parents arrived to their seats on November 26, 2021, they saw that the seat was on the aisle, and there was no open space for his wheelchair to park there in the seating area (i.e. no space where seats had been removed for a wheelchair to park there). The employees of the Paramount Theatre apparently assumed that Mr. Tril would want to transfer from his motorized wheelchair to sit in the fixed seat. But Mr. Tril did not want to, and indeed, due to his physical condition and limitations, he could not do such a transfer and stay in that seat. Due to his medical condition, he needs to stay in the motorized wheelchair.

5. Upon being informed of the problem, a Theatre employee directed Mr. Tril and his parents to go back out to the lobby, where Mr. Tril and his father waited for about 30 minutes while Mr. Tril's mother accompanied an employee to arrange to change their tickets for new tickets in a new location.

6. After about 30 minutes, Mr. Tril's mother returned with new tickets. These were in Section VV, seats 109, 111, and 113. This is at the very back of the theatre. This area is farther away from the stage. Tickets in this area cost less. However, the Theatre did not offer to refund the difference from the price of the original, more-expensive tickets. An employee brought three bags of chips and three Coca-Colas as a consolation, he said, for the situation. Mr. Tril felt insulted and humiliated.

7. The new seats were in an area at the back wall of the main floor where two or three regular seats had been unbolted from the floor and removed so that a wheelchair can fit there. However, when the show began, the people in the rows in front of Mr. Tril stood up and started dancing in place. This completely blocked the view of the show for Mr. Tril. He and his parents asked the people in front of them to sit down, but this was met with a hostile reaction and refusal. Mr. Tril was unable to see the show. There was no elevated section for him to place his wheelchair in order to be able to see over the heads of the persons standing up in front of him. He found this frustrating and humiliating. Eventually, he and his parents left.

8. Plaintiff Tril timely filed a claim with the City pursuant to Section 910 of the California Government Code, using the prescribed form, on January 7, 2022. The City acknowledged receipt via a letter dated January 21, 2022 from Catherine Jennings, a Claims Examiner for Carl Warren & Company, LLC, the third-party claims administrator for the City of Oakland.

On January 21, 2022, Ms. Jennings wrote an email to plaintiff's counsel questioning whether the City of Oakland has any ownership interest in the Paramount Theater or the real property. Plaintiff's counsel answered her on January 28, 2022, pointing out that the Tax Assessor of the County of Alameda has confirmed that the City of Oakland owns the parcel in question. The City has neither accepted Mr. Tril's claim nor denied it.

9. Plaintiff Tril would like to return to this Theater. He likes some of the shows they offer.

10. As the result of the City's failure to provide access as required by law, Plaintiff has suffered, and will continue to suffer difficulty, discomfort, emotional and physical injury, inconvenience, pain, fear and anxiety.

11. Federal and state disability laws require that when a disabled person visits a theatre like this, he or she must have "line of sight comparable to those provided for members of the general public." (ADAAG §4.33.3 [1991 standards].) According to public records, the Paramount was renovated in 1998 for ADA improvements, and in 2019 for path of travel improvements.

12. Federal case law has interpreted the phrase "line of sight comparable to those provided for members of the general public" to mean lines of sight over spectators who stand, in situations where spectators can be expected to stand during the event or show being viewed, if it is "readily achievable" to do so (in facilities that were existing before the passage of the ADA). (See, e.g., Bailey v. Board of Commissioners of the Louisiana Stadium and Exposition Dist., 484 F.Supp. 3d 346, 372 (U.S. Dist. Ct., E.D. Louisiana, 2020). In the type of concert that Mr. Tril attended on November 26, 2021, people routinely stand up and dance in the aisles, so the Theatre can anticipate that this will happen regularly.

13. Pursuant to the ADA, and pursuant to the case law interpreting the ADA, and pursuant to the Planning Code of Oakland, Title 17, Chapter 17.131, Mr. Tril requested in his pre-suit notification to the City a modification of the Paramount Theatre to permit, establish, and arrange for line-of-sight equivalence so that he can see over the heads of people standing in front of him. Specifically, he requested that the area of Section VV that he was directed to at the back of the Theatre's main floor be provided with a raised platform for wheelchairs so that he can see over the persons standing in front of him.

14. On information and belief, the subject Theater has undergone construction and/or alterations since January 1, 1982, triggering applicability of California accessibility standards, California

Complaint for damages and injunctive relief

Code of Regulations, Title 24. Plaintiff is informed and believes, and on that basis alleges that Defendants have failed to comply with these standards.

15. On information and belief, the subject Theater has undergone construction and/or alterations since January 26, 1992 triggering applicability of ADA Standards for Accessible Design (ADA Standards), 28 C.F.R. pt. 36, app. D. Plaintiff is informed and believes, and on that basis, alleges that Defendants have failed to comply with these standards.

16. As the result of Defendants' acts and omissions, as herein described, Plaintiff suffered difficulty, distress, inconvenience, frustration, embarrassment, fear and anxiety, all to his damage.

17. On information and belief, there are other access barriers and discriminatory policies that relate to Plaintiff's disabilities such that they exclude and deter Plaintiff and others similarly situated from enjoying full and equal access to the programs, services and activities offered by Defendants to the general public at the Theater, causing him damages. The extent of these additional barriers will be made known after a full inspection of the Theater, and if necessary, reflected in an amendment of Plaintiff's Complaint.

## FIRST CAUSE OF ACTION – AMERICANS WITH DISABILITIES ACT TITLE II
### (Against defendant City of Oakland)

18. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs 1 to 17.

19. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132.)

20. At all times relevant to this action, Defendant City was a "public entity" within the meaning of Title II of the ADA, and the Theater is a program, service and/or activity Defendant offers to the public.

21. Plaintiff is, and at all times relevant herein was, a qualified individual with a disability within the meaning of Title II of the ADA, and meets the essential eligibility requirements for use of the Theater.

22. Defendant City's acts and omissions as herein alleged have excluded and/or denied Plaintiff the benefit and use of the Theater, in violation of Title II and its implementing regulations. The Defendant's discriminatory conduct includes, inter alia:

   a. Failing to operate its Theater so that they are "readily accessible to and usable by individuals with disabilities" (28 C.F.R. § 35.150(a));
   b. Failing to design, construct and/or alter the Theater in a manner such that they are readily accessible to and usable by individuals with disabilities, when the construction/alteration was commenced after January 26, 1992 (28 C.F.R. § 35.151);
   c. Denying Plaintiff the opportunity to participate in or benefit from the aids, benefits, or services offered by Defendants to members of the public, on the basis of his disabilities (28 C.F.R. § 35.130(b)(1)(i));
   d. Affording Plaintiff an opportunity to participate in or benefit from the aids, benefits, or services offered by Defendant to members of the public that is not equal to that afforded his non-disabled peers (28 C.F.R. § 35.130(b)(1)(ii));
   e. Providing Plaintiff with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others (28 C.F.R. § 35.130(b)(1)(iii));
   f. Otherwise limiting Plaintiff in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aids, benefits, or services offered by Defendant to members of the public (28 C.F.R. § 35.130(b)(1)(vii));
   g. Utilizing methods of administration that have the effect of subjecting Plaintiff to discrimination on the basis of his disability (28 C.F.R. § 35.130(b)(3)(i)); and
   h. Failing to make reasonable modifications in policies, practices, or procedures where necessary to avoid discrimination against Plaintiff on the basis of his disability (28 C.F.R. § 35.130(b)(7)).

23. Defendant's duties under Title II are mandatory and long-established. Defendant is deemed to have had knowledge of its duties at all times relevant herein; its failure to carry out said duties as alleged herein was willful and knowing and/or the product of deliberate indifference.

24. Pursuant to 42 U.S.C. §§ 12133 and 12205, Plaintiff prays for judgment as set forth below.

Complaint for damages and injunctive relief

## SECOND CAUSE OF ACTION – AMERICANS WITH DISABILITIES ACT TITLE III
### (Against defendant Corporation)

25. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

26. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a). Section 12182(b)(1)(E) of the ADA also provides that it is illegal to "exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."

27. The corporation discriminated against Plaintiff by denying him the equal goods, services, facilities, privileges, advantages, accommodations or other opportunities as a result of his inability to see the show, as set out above.

28. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

29. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. Id. § 12182(b)(2)(A)(v).

30. Here, Plaintiff alleges that the Corporation can easily remove the architectural barriers at the Theater without much difficulty or expense, and that Corporation violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

31. In the alternative, if it was not "readily achievable" for the Corporation to remove the Theater's barriers, then the Corporation violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

32. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary

function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

33. Here, the Corporation altered the Theater in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible, as it regarded the ability to see the show that was being presented.

34. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

35. Here, the Corporation violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Theater, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

36. The Corporation additionally violated the ADA by failing to maintain in operable working condition those features of the Theater that are required to be readily accessible to and usable by persons with disabilities.

37. Such failure by the Corporation to maintain the Theater in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or other similar factors.

38. Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for the alleged violations. 42 U.S.C. § 12205.

THIRD CAUSE OF ACTION – SECTION 504 OF REHABILITATION ACT 1973
(Against defendants City and Corporation)

39. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

40. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any

program or activity receiving federal financial assistance." 29 U.S.C. § 794(a). See also 28 C.F.R. Part 42, Subpart G.

41. On information and belief, defendant City and defendant Corporation are the recipients of "federal financial assistance" in the form of federal grants and loans.

42. Defendant City's and defendant Corporation's acts and omissions as herein alleged have excluded and/or denied Plaintiff the benefit of and/or participation in the programs and activities offered by Defendant City and defendant Corporation to members of the public, in violation of Section 504 and its implementing regulations.

43. Defendant City's and defendant Corporation's duties under Section 504 are mandatory and long-established. Defendant City and defendant Corporation are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties as alleged herein was willful and knowing and/or the product of deliberate indifference.

44. Pursuant to 29 U.S.C. § 794a, Plaintiff prays for judgment as set forth below.

FOURTH CAUSE OF ACTION – CALIFORNIA DISABLED PERSONS ACT (CIVIL CODE 54)

45. Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs.

46. The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the … sidewalks, walkways, … public facilities, and other public places." Cal. Civ. Code § 54(a).

47. Defendant's acts and omissions, described herein, violate the rights of Plaintiff under the CDPA. Among other things, Defendants failed to ensure that facilities constructed or altered after December 1981 conformed to the standards contained in California Code of Regulations, Title 24.

48. A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, § 54(c).

49. Defendant's duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of its duties at all times relevant herein; its failure to carry out said duties as alleged, was willful and knowing and/or the product of deliberate indifference.

Complaint for damages and injunctive relief

50. Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code §§ 54.3(a), Plaintiff prays for judgment as set forth below. (California Civil Code §55 is specifically <u>not</u> invoked by plaintiff.)

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an injunction ordering Defendants City and Corporation to:
    a. Alter the Theater at the subject location to bring it into compliance with applicable federal and state accessibility standards and make it fully and equally available to individuals with mobility disabilities;
    b. Modify their policies to ensure the City and the Corporation comply with applicable new construction and alteration standards and its program accessibility obligations.
2. Award Plaintiff general, special, compensatory, and statutory damages in an amount within the jurisdiction of this Court;
3. Award Plaintiff attorney's fees, litigation expenses and costs of suit, as provided by law; and
4. Award such other and further relief as the Court deems just and proper.

Date: February 22, 2022                         LAW OFFICE OF RICHARD A. MAC BRIDE

By: _____

Richard A. Mac Bride, Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury for all claims for which a jury is permitted.

/s/ Richard A. Mac Bride

Richard A. Mac Bride, Attorney for Plaintiff

Date: February 22, 2022

_____

Complaint for damages and injunctive relief

VERIFICATION

I, Emmanuel Tril, plaintiff herein, hereby swear under penalty of perjury under the laws of the State of California as follows: I am familiar with the contents of this complaint and verify that the facts alleged are true and correct according to my personal knowledge, except as to those matters that are pled on information and belief, and as to those matters, I have reason to believe that they are true.

/s/ Emmanuel Tril

Emmanuel Tril

Date: February 22, 2022